IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRENDA SMITH, )
    Plaintiff, )
)
    vs ) Civil Action No. 10-1680
)
PNC BANK, and MIKE MORTENSEN as )
an individual, and as an aider and abettor, )
    Defendants. )

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the defendants' motion to dismiss certain claims in the amended complaint (Document No. 10) be granted without prejudice as to Count III, granted as to Count IV, and denied in all other respects.

II. Report:

Presently before the Court is a motion to dismiss certain claims in the amended complaint submitted by defendants PNC Bank and Mike Mortensen. Specifically, the defendants move to dismiss Counts III and IV of the amended complaint, as well as claims purporting to arise under the United States Constitution as described in ¶ 4, and claims for declaratory and injunctive relief asserted in Counts I, II and III. For reasons discussed below, the defendants' motion to dismiss should be granted in part and denied in part.

The plaintiff, Brenda Smith, formerly an employee of PNC Bank, has filed a four-count amended complaint against the defendants. In Counts I and II, the plaintiff complains that PNC Bank violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), by unlawfully terminating her employment on the basis of her gender (Count I) and

1

in retaliation for complaining to it that she was sexually harassed by defendant Mortensen (Count II). In Count III, both defendants are said to violated the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA") by discriminating and retaliating against the plaintiff because of her sex. In Count IV, the plaintiff contends that defendant Mortensen engaged in tortious conduct under Pennsylvania law by making untrue statements about her which cast her in a false light. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3).

The plaintiff alleges that from February 8, 2010 to April 29, 2010, she was employed by PNC Bank as a Senior Vice President, Retail Initiatives; that shortly after she was hired, defendant Mortensen, the President and CEO of PNC Brokerage Corp., a wholly owned subsidiary/affiliate of PNC Bank, subjected her to sex discrimination by repeatedly harassing, demeaning and discrediting her; that after meeting with Mortensen on April 15, 2010, at which time he raged at her, belittled and intimidated her, she reported his mistreatment to PNC Bank; that on April 29, 2010, two weeks after complaining of Mortensen's mistreatment, her employment was terminated by PNC Bank for no valid reason, and it did not discipline Mortensen in any way; and that PNC Bank blamed her for Mortensen's failures and did not acknowledge the contributions she made on assigned projects (Amended Complaint at ¶¶ 7-13).

On or about June 30, 2010, the plaintiff filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and requested that her charge be dual-filed with the Pennsylvania Human Relations Commission ("PHRC") (Id. at ¶ 15). On or about October 5, 2010, the EEOC issued her a "right to sue" letter in connection with her charge (Id. at ¶ 16). On December 15, 2010, the plaintiff initiated this action by filing a complaint against the defendants. On March 10, 2011, the plaintiff amended the complaint, and as discussed above, she asserts Title VII and PHRA claims against PNC Bank, and PHRA and a

false light invasion of privacy claim against Mortensen.

In response to the amended complaint, the defendants have moved to dismiss certain claims for failure to state a claim pursuant to F.R.Civ.P. 12(b)(6). The defendants argue that the plaintiff's PHRA claims in Count III should be dismissed, because she failed to exhaust her administrative remedies; that her false light claim in Count IV should be dismissed, as she has not pled sufficient facts to state a viable claim; that her claims under the federal Constitution, as set forth in ¶ 4 of the amended complaint, fail because the defendants are not state actors; and that her claims for declaratory and injunctive relief in connection with her Title VII and PHRA claims should be dismissed, as there are adequate remedies available at law.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC, 578 F.3d 203, 210-11 (3d Cir. 2009), citing Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949 (2009). The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211, quoting Iqbal, 129 S.Ct. at 1950. Importantly, "a complaint must do more than allege the plaintiff's entitlement to relief"; it "has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211, citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). A pleading that only proffers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

PHRA claim in Count III:

In their motion to dismiss the PHRA claim in Count III, the defendants argue that the plaintiff failed to exhaust her administrative remedies prior to commencing suit. Specifically, the defendants assert that the plaintiff filed her PHRA claim less than one year after her charge

was submitted to the PHRC, and prior to that agency dismissing her charge or entering into a conciliation agreement to which she was a party. We agree.

To bring suit alleging a PHRA violation, a plaintiff must first file an administrative claim with the PHRC "which has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter." Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 471 (3d Cir. 2001), citing Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 920 (Pa. 1988). "If the PHRC does not resolve the administrative charge within one year, the commission must notify the complainant that he may bring an action" in court. Burgh, 251 F.3d at 471, citing 43 Pa.C.S. § 962(c)(1). "A party may only pursue [a] PHRA claim in the courts if, within one year of the filing of an administrative complaint, the PHRC dismisses the complaint or fails to enter a conciliation agreement to which the complainant is a party." Santi v. Business Records Management, LLC, 2010 WL 3120047, *6 (W.D.Pa., Aug. 9, 2010). Also see, Wardlaw v. City of Philadelphia, 2011 WL 1044936, *3 (E.D.Pa., March 21, 2011) ("Pennsylvania law grants the PHRC exclusive jurisdiction over PHRA claims for a period of one year… and after the expiration of one year, a complainant may bring suit regardless of whether or not he has received a letter from the PHRC.").

Here, the plaintiff failed to exhaust her administrative remedies under the PHRA. As recited above, the plaintiff's charge of discrimination was filed with the EEOC and cross-filed with the PHRC on or about June 30, 2010 (Amended Complaint at ¶ 15). The plaintiff filed the complaint in this action on December 15, 2010 and amended her complaint on March 10, 2011, prior to the one-year filing of her administrative charge. Nowhere is it alleged in the amended complaint that the PHRC dismissed the plaintiff's charge or conciliated the matter, nor is it alleged that the plaintiff exhausted her administrative remedies under the PHRA.

In opposing the motion to dismiss Count III, the plaintiff insists that her PHRA claim should be permitted to proceed, as the PHRC dismissed her charge when she commenced suit in federal court, citing a July 10, 1992 policy issued by the PHRC (Policy No. 92-02). That policy, attached as Exhibit A to the plaintiff's opposition brief, provides in pertinent part that where a complainant files a complaint with both the PHRC and the EEOC, and the complainant chooses to proceed in federal court, the Commission, upon becoming aware of the filing in federal court, "shall dismiss the PHRC complaint." Unlike the plaintiff, we do not view this policy as permitting a claimant to by-pass the PHRC's one-year exclusive jurisdiction over a PHRA claim by filing suit in federal court; rather, we believe the policy entails an effort by the PHRC to avoid duplicating the EEOC's investigation of a claim pursuant to their worksharing agreement.

In Woodson v. Scott Paper Co., 109 F.3d 913, 925-26 (3d Cir. 1997), the Third Circuit Court of Appeals explained the effect of the agencies' worksharing agreement as follows:

> [T]he PHRC and the EEOC have entered into an agreement through which they have apportioned initial jurisdiction over discrimination complaints in order to avoid unnecessary duplication of investigatory time and effort. Under this agreement, each agency waives its right to initially review claims that are filed first with the other agency…
> [H]owever, … the agreement between the EEOC and the PHRC is relevant only to the issue of whether a plaintiff has satisfied the administrative exhaustion requirements of the federal anti-discrimination statutes. That is because federal courts lack jurisdiction to hear a Title VII claim, unless the plaintiff has filed a charge with the EEOC…
> Under the worksharing agreement, a claim that is filed first with the EEOC can be processed by the EEOC, without being investigated as an initial matter by the PHRC. Through this worksharing agreement, therefore, Pennsylvania has waived its statutory right to initially process discrimination claims, and hence the agreement operates to 'terminate' the PHRC proceedings with respect to those complaints that are filed first with the EEOC… In other words, the worksharing agreement allows a plaintiff to proceed in court under Title VII without first filing with the PHRC…

As previously mentioned, however, "[t]he PHRA… requires that claims be brought first

5

to… the PHRC, which has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter." Burgh, supra, 251 F.3d at 471, citing Clay, supra, 559 A.2d at 920. Thus, "[a] complainant may not file an action in court for a period of one year." Id. Also see, Wardlaw, supra, 2011 WL 1044936, at *3 (even where an administrative charge is cross-filed with the EEOC and PHRC pursuant to their work-sharing agreement, "Pennsylvania law grants the PHRC exclusive jurisdiction over the PHRA claims for a period of one year… and after the expiration of one year, a complainant may bring suit").

Based on the foregoing, the plaintiff's PHRA claim is premature. Rather than dismiss the claim with prejudice, however, the Court should follow the lead of numerous district court cases in this circuit, including Santi, supra, where Judge Ambrose granted a motion to dismiss a PHRA claim for failure to exhaust administrative remedies without prejudice. See, 2010 WL 3120047, at *6. As Judge Ambrose stated in Santi:

> I agree with those courts within this Circuit that, when confronted
> with this issue, have permitted the plaintiff to amend his complaint
> in accordance with the one year rule once the administrative
> requirements have been met. Id. (listing cases). Because I find that
> Santi otherwise states a valid PHRA claim, I grant [the] motion to
> dismiss the claim for failure to exhaust administrative remedies,
> without prejudice to Santi's ability to amend his complaint to reinstate
> his PHRA claim following the completion of the administrative process.

Id.

We believe this issue should be handled as in Santi. Thus, the defendants' motion to dismiss the PHRA claim in Count III should be granted without prejudice, subject to the plaintiff's ability to amend the complaint to reinstate the PHRA claim after she exhausts her administrative remedies.

False light invasion of privacy claim in Count IV:

The defendants also move to dismiss Count IV of the amended complaint which purports

to state a claim for false light invasion of privacy against defendant Mortensen. As to that claim, the plaintiff asserts that in March and April of 2010, defendant Mortensen made the following comments about her to several PNC Bank employees: that she is "inept", "can't think straight", "doesn't know anything about the investment business", "tries to[o] hard to get noticed", "doesn't know what she's talking about", "doesn't know what [her] job is", "doesn't know anything about sales", "has never been in sales", "has an agenda", "has too many opinions", "is putting the bank at risk", and that her "work product is unacceptable" (Amended Complaint at ¶ 56). According to the plaintiff, these comments were made to the following PNC Bank employees: (a) Karen Larrimer, Executive Vice President of Marketing; (b) Neil Hall, Executive Vice President; (c) John Randall, Senior Vice President, Investments; (d) Patti Kotter, Senior Vice President, Investment CFO; and (e) Anuj Dhanda, Executive Vice President, Chief Information Officer (Id. at ¶ 57).

The plaintiff also asserts that defendant Mortensen made similar comments to three outside consultants working within PNC Bank -- Cynthia Hayes, Laurie Hosie and Diane Talbot -- all of whom, like the plaintiff, were alumnae of Merrill Lynch, thereby effecting the plaintiff's reputation in the larger banking community (Id. at ¶ 58). The plaintiff contends that Mortensen knew the statements he made about her were false when uttered, yet he made them to disparage the plaintiff, as he mistakenly believed she was "after his job" (Id. at ¶ 60).

In moving to dismiss Count IV, the defendants argue that Mortensen's alleged comments do not meet the "publicity" component of a false light claim, as they were not widely disseminated to the public at large. In addition, the defendants insist that the plaintiff's false light claim is subject to dismissal, as Mortensen's internal communications about her job performance are absolutely privileged. The movants also argue that Mortensen's alleged

7

comments about the plaintiff's job performance were not highly offensive to a reasonable person.

"The tort of false light-invasion of privacy involves publicity that unreasonably places the other in a false light before the public." Gagliardi v. Experian Information Solutions, 2009 WL 365647, *5 (W.D.Pa., Feb. 12, 2009) (quoting Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 654 (Pa.Super. 1999)), aff'd., 357 Fed.Appx. 413 (3d Cir. 2009). The tort is defined in the Restatement (Second) of Torts, § 652E as follows:

> **§ 652E. Publicity Placing Person in False Light**
>
> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of [her] privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

The elements to be proven in a false light claim are "publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public." Gagliardi, supra, 2009 WL 365647, at *5 (quoting Rush, 732 A.2d at 654). In this context, "'publicity' means 'that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" Doe v. Wyoming Valley Health Care System, 987 A.2d 758, 765-66 (Pa.Super. 2010) (quoting Restatement (Second) of Torts § 652D, Comment A and § 652E, Comment A). "'Thus, it is not an invasion of the right of privacy… to communicate a fact concerning the plaintiff's private life … to a small group of persons.'" Id. Also see, Gagliardi, 2009 WL 365647, at *5 ("Communication to a few persons does not constitute the required publicity."). That is because "[w]idespread dissemination, rather than mere publication,

is required." Id. (citation omitted).

Here, Mortensen's complained-of comments about the plaintiff's job performance were not widely disseminated. Instead, they were communicated to five bank employees and three outside consultants working within the bank (Amended Complaint at ¶¶ 57-58). See, Vogel v. W.T. Grant Co., 327 A.2d 133, 137 (Pa. 1974) (finding no "publicity" where "four persons, three relatives and one employer" were notified of an arrearage in Vogel's account). The plaintiff also surmises that Mortensen's comments may have been disseminated to other unidentified persons (Id. at ¶ 64); however, her pleadings do not reflect that Mortensen's comments were made public, i.e., were "communicat[ed]… to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." See, Doe, supra, 987 A.2d at 765-66 (quoting Restatement (Second) of Torts § 652E, Comment A). In this regard, where complained-of comments about an employee are made to a "community of employees" at staff meetings or in discussions involving the defendant and other personnel, as here, they do not rise to the requisite level of "publicity" needed to state a valid claim. Wells v. Thomas, 569 F.Supp. 426, 437 (E.D.Pa. 1983). Also see, Curran v. Children's Service Center of Wyoming Cty. Inc., 578 A.2d 8, 13 (Pa.Super. 1990) (workplace communication that enabled employer to make decision regarding termination of the plaintiff did not constitute "publicity").

We find that the plaintiff's false light claim lacks the "publicity" element required by the tort, as Mortensen's comments about the plaintiff were not widely-disseminated to the public at large. Accordingly, the motion to dismiss Count IV should be granted.[1]

Perceived constitutional claims in paragraph 4 of Amended Complaint:

In their motion to dismiss, the defendants argue that the plaintiff's claims under the

---

[1] Having found that the false light claim lacks the requisite "publicity" element, we do not address the defendants' alternate arguments that Mortensen's comments were privileged and not highly offensive to a reasonable person.

9

federal Constitution, as described in ¶ 4 of the amended complaint, must fail, as neither PNC Bank, nor Mortensen are state actors. In relevant part, ¶ 4 of the Amended Complaint provides:

> This is an action to redress the deprivation by the Defendants of the Plaintiff's civil rights, and in particular, the right to be free from illegal, invidious and damaging discrimination in her employment because of sex and retalation, which rights arise under and are guaranteed by the Constitution of the United States and the laws and statutes enacted pursuant thereto, and in particular, Title VII…, and includes as well a pendent claim under State law for violation of Plaintiff's rights under the [PHRA]…

We agree with the plaintiff that the movants have improperly interpreted ¶ 4 as setting forth claims under the federal Constitution, when in fact it merely cites authorities establishing the Court's jurisdiction over this suit. Indeed, the four counts of the amended complaint are clearly delineated, and none of the plaintiff's claims profess to involve state action, nor require a pleading that the defendants deprived her of a right under color of state law. Hence, there is no merit to this portion of the motion to dismiss.

Claims for declaratory and equitable relief in Counts I-III:

The defendants also move to dismiss the plaintiff's request for declaratory and injunctive relief in connection with her Title VII and PHRA claims in Counts I-III, arguing that both Title VII and the PHRA contain comprehensive remedial schemes that will adequately redress her alleged harm. At this juncture, we do not believe it is appropriate to dismiss the plaintiff's request for equitable and declaratory relief.

In addition to her prayer for monetary damages, the plaintiff requests that the Court "[e]nter a declaratory judgment that the practices, policies, customs and usages complained of herein are unlawful and violative of Title VII", "[p]ermanently enjoin… PNC [Bank] [and] its officials [and] employees… from engaging in … the unlawful practices… set forth herein", "[r]einstate Plaintiff to her previous position", and "[o]rder that … PNC [Bank] destroy all

derogatory comments and discipline files regarding Plaintiff and expunge all references to the circumstances of any such discipline" (Amended Complaint at ¶¶ 23(a),(b),(d),(g) & 29(a),(b),(d),(g)).

The Third Circuit Court of Appeals has discussed the equitable remedies that can be awarded under Title VII as follows:

> Title VII provides broad equitable discretion, which courts must exercise in light of the large objectives of the Act. The primary objective of Title VII is the elimination of discrimination in the workplace. A central purpose of Title VII relief is to make persons whole for injuries suffered on account of unlawful employment discrimination and to restore the plaintiff as fully as possible to the position he otherwise would have been in absent discrimination.

Gunby v. Pennsylvania Electric Co., 840 F.2d 1108, 1122 (3d Cir. 1988) (internal quotation marks and citations omitted). Accord, Kirby v. J.C. Penney Corp., 2009 WL 4894664, *1 (W.D.Pa., Dec. 11, 2009).

In Kirby, supra, this Court, per Judge McVerry, granted a post trial motion for equitable relief to the extent that the prevailing plaintiff in an employment discrimination case sought reinstatement and expungement of all adverse material from her personnel file that pertained to her termination. As Judge McVerry stated:

> [N]ormally in an employment discrimination case where a plaintiff has been terminated, a court may consider reinstatement of the plaintiff to the position from which she was terminated… Likewise and appropriately so, Defendant does not oppose expunging all adverse material with respect to the termination from the personnel file of Plaintiff.

2009 WL 4894664, at *2.

Here, the plaintiff requests such equitable relief as reinstatement to her previous position and expungement of references to the circumstances of her discipline. Further, the plaintiff seeks a declaratory judgment that PNC Bank's employment practices in this matter were unlawful. It

11

is provided in Fed.R.Civ.P. 57 that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Based on the foregoing, we do not believe the plaintiff's request for declaratory and equitable relief should be dismissed at this juncture.

Therefore, it is recommended that the defendants' motion to dismiss certain claims in the amended complaint (Document No. 10) be granted without prejudice as to Count III, granted as to Count IV, and denied in all other respects.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal. Any party opposing written objections shall have seven (7) days from the date of service of objections to respond to them.

Respectfully submitted,

s/ROBERT C. MITCHELL  
United States Magistrate Judge

Dated: June 2, 2011